THE FIRST NATIONAL BANK OF GRUNDY CENTER v. SNYDER BROS. *et al.*

| 79 | 191 |
| 93 | 445 |
| 79 | 191 |
| 97 | 496 |
| 79 | 191 |
| 136 | 394 |

**Evidence:** CONTRACTS: CONSIDERATION: PAROL TO VARY WRITING.
Parol evidence is never admissible to alter, vary or contradict a written contract, but it is admissible to show what the consideration was, unless the consideration is expressed in the instrument in such unmistakable language that parol evidence is not necessary to understand it. But where several instruments constituted parts of one transaction, and were to be considered together as such, and each instrument taken separately clearly expressed the

consideration for which it was made, but when taken together as parts of the same transaction it did not clearly appear what the consideration was, *held* that parol testimony was admissible to show the real consideration. (See opinion for citations and for application of the rule.)

*Appeal from Grundy District Court.*—Hon. C. F. Couch, Judge.

FILED, JANUARY 30, 1890.

ACTION in equity asking certain foreclosures, and for other relief. The case was submitted upon the issues joined on plaintiff's substituted and supplemental petitions, and the answers of the defendants thereto, and decree entered in favor of the plaintiffs, from which the defendants Snyder Bros., H. P. Snyder, J. M. Snyder, and A. N. Woods, assignee of Snyder Bros., appeal.

It appears without controversy that Snyder Bros., a partnership doing business as hardware merchants, and J. M. Snyder, individually, were indebted to the plaintiff bank in the sum of about five thousand dollars, evidenced by notes and an account for which plaintiff was insisting on security, and to secure which they requested a mortgage on Snyder Bros.' stock of goods, which they declined to give because of the effect it would have upon their credit. J. M. Snyder, who transacted the business under consideration on behalf of his firm, being the owner of the premises upon which their business was carried on, and of certain other lots, on the twenty-first day of April, 1886, executed his two warranty deeds therefor to the plaintiff; his wife, Anna C., joining therein. The consideration named in the deed for the storehouse property is two thousand dollars, and in the other, seven hundred dollars. On the same day, and as a part of the same transaction, the plaintiff executed to J. M. Snyder its two bonds, in one of which it agreed to convey to him said storehouse property upon payment of two thousand dollars on or before April 21, 1891, with ten per cent. interest,

payable annually, according to the tenor of his certain promissory note; he to keep the property insured for two thousand dollars for the benefit of plaintiff, and pay all taxes; non-payment of any of the sums within twenty days after due to entitle plaintiff to declare the contract at an end. By the other bond the plaintiff agreed to convey to J. M. Snyder the other lots deeded to it, upon the payment of seven hundred dollars on or before April 21, 1891, with ten per cent. interest, payable annually, according to the tenor of his promissory note, Snyder to pay all taxes, and a failure to pay any of the sums for twenty days to entitle plaintiff to declare the contract at an end. At the same time J. M. Snyder executed to plaintiff the two promissory notes of Snyder Bros.,—one for two thousand dollars and one for seven hundred dollars,—due "on or before five years after date," with ten per cent. interest, payable annually; and the plaintiff gave to him a receipt against a note for two thousand dollars, and surrendered to him a note for four hundred dollars, and applied the balance on interest and by credit on deposit account. On the same day, and as a part of the same transaction, a "duplicate lease and agreement" was executed by the plaintiff and Snyder Bros., whereby the plaintiff leased to John M. Snyder and H. P. Snyder said storehouse property for five years from that date, at the yearly rent of six hundred dollars, payable monthly, in advance; Snyders to keep the building insured for two thousand dollars for the benefit of the bank; a failure to do which should work a forfeiture of the lease. It is further agreed therein by Snyder that plaintiff should have a lien upon all fixtures, stocks or merchandise kept or used on the premises, for rents due or to become due, whether exempt from execution or not, and that, in case of failure on their part to keep all the covenants, the plaintiff might, at its option, declare the lease void. The actual rental value of the storehouse property was twenty-five to thirty dollars per month. Snyder Bros. remained in possession until December 10, 1886, when

they made a general assignment for the benefit of their creditors, since which their assignee has had control and possession, and received the rents. Snyder Bros. failed to pay the taxes assessed against the storehouse and personal property, and to keep the same insured, whereupon plaintiff, to preserve its security, paid the taxes and took out insurance.

On December 22, 1886, Snyder Bros. executed a chattel mortgage to the Iowa Barb & Steel Wire Company on their stock of goods, to secure the payment of $990.82. The personal property was sold under stipulation by the assignee, the proceeds to be held to abide the orders of the court. The decree entered June 7, 1888, against Snyder Bros. and J. M. Snyder and H. P. Snyder is: (1) Judgment in favor of plaintiff for $2,492.43, with interest at ten per cent. on $2,455.66, and six per cent. on $36.77, from date, with foreclosure of the title-bond on the storehouse property. (2) Judgment in favor of plaintiff for $866.53, with interest at ten per cent. on $855.97, and at six per cent. on $10.56 thereof, from date, with foreclosure of the other title-bond, and barring defendants, and all claiming under them, from all rights except the right to redeem. (3) Judgment in favor of the plaintiff, for $2,757.28, with interest at ten per cent. on $2,616.17, and at six per cent. on $142.15, thereof, from date, and declaring the same a lien upon the personal property described in the lease, and ordering the application of the proceeds of the sale thereof to the payment of said judgment. (4) Judgment in favor of the Iowa Barb & Steel Wire Company for $1,107.01, with interest at eight per cent., and declaring the same a second lien on said personal property.

*Rea & Hayes*, for appellants.

*Boies, Husted & Boies*, for appellee.

Given, J.—I. Appellants' contention is that said several instruments were executed as parts of one transaction, and must therefore be construed together; that

First Nat. Bk. of Grundy Center v. Snyder Bros.

thus construed they show that the consideration for the deeds and bonds was the extension of time on the twenty-seven hundred dollars indebtedness, and as security therefor, thus constituting an equitable mortgage; and that the consideration for the lease was the extension of time for the balance of the indebtedness due to plaintiff, and as security therefor. Appellants also contend that, as a part of the same transaction, it was orally agreed between the parties that such were the considérations and purposes of said instruments. Appellee contends that the agreement was that payments on the lease would be applied in discharge of the two-thousand-dollar note, and not upon any other of the indebtedness. On the hearing appellee was permitted, over appellants' objections, to introduce evidence tending to show an oral agreement, as claimed by appellee, and appellants introduced evidence tending to show that the oral agreement was as claimed by them.

II.    It is a familiar rule that written contracts shall not be changed, varied or contradicted by contemporary or prior oral agreements. *Lormer v. Allyn*, 64 Iowa, 727; *McClelland v. James*, 33 Iowa, 578; *De Long v. Lee*, 73 Iowa, 54. In *Day v. Lown*, 51 Iowa, 366, it was held "that parol evidence is admissible to prove that the consideration is other and different from that stated in the deed." *College v. Bryan*, 50 Iowa, 294, was an action upon a promissory note to the college for five hundred dollars, "for value received, with eight per cent. interest, payable at the office of the treasurer of said college on the first day of January and July of each year." One of the defenses pleaded was that the amount promised was a gift to the endowment fund, and promised in consideration of an agreement that all the funds donated for the endowment should be used exclusively for that purpose, and that the fund contributed had been diverted from that purpose. This court, after quoting from *Atherton v. Dearmond*, 33 Iowa, 353, say : "In the case before us the contemporaneous contract—namely, the agreement

for the preservation and proper use of the endowment fund, pertains to the consideration of the note in suit, and reaches no further.'' In *De Long v. Lee*, 73 Iowa, 54, it is said that the parol agreement pleaded as a defense, and supported by proof, did not pertain to the consideration of the note; thus implying that a different rule applies when the defense is as to the consideration. *Courtwright v. Strickler*, 37 Iowa, 382, was a promise to pay ''two hundred dollars ten days after the complete construction of its railway, and the running of the cars over the same, to a point within three-quarters of a mile of the corporate limits of the town of Centerville.'' The principal contention was whether the conditions on which payment was to be made had been complied with,—the defendant contending that it was on the completion of the road to its terminus, Kansas City; the plaintiff contending that it was to Centerville only. The defendant proposed to prove what the consideration was, but was not permitted to do so. This court says : '' The considerations are expressed in the instruments in unmistakable language, and parol evidence is not necessary in order to understand it, and inadmissible to vary or differently apply it. The evidence was rightly rejected.''

III.   Another familiar rule which it is proper to notice is that the circumstances under which a contract is made may be developed for the ''purpose of arriving at the intention of the parties, when such intention does not clearly appear on the face of the instrument. But the intention of the parties cannot be enforced unless consistent with the language used, and the intention cannot be ascertained, except in case of latent ambiguity, by bringing forward proof of declarations or conversations which took place at the time the instrument was made, or before or after.'' *McClelland v. James, supra.* Several cases are cited holding that it is competent to show by parol that there was in fact no consideration, but, as no such claim is made in this case, we need not notice these authorities. Our conclusion is that parol

evidence is never admissible to alter, vary or contradict the written contract; yet that it is admissible to show what the consideration was, unless the consideration is expressed in the instrument in such unmistakable language that parol evidence is not necessary to understand it. Taken separately, the several instruments under notice express unmistakably the consideration upon and the purpose for which they were executed; but taken together, as parts of the same transaction, not so. Taken together, without explanation, and we have Mr. Snyder conveying his real estate by absolute deeds, and taking back title-bonds, and joining in a lease to himself and brother of the same property. Such transactions never occur without some peculiar circumstances to call them forth. Looking, as we may, to the circumstances under which the parties acted, and learning, as we have, of the indebtedness to plaintiff, and plaintiff's desire to secure the same, we begin to understand why this combination of instruments; but even yet it is not clear what the considerations were for the different instruments. Taking the instruments separately, and as independent of each other, the considerations are expressed in each in unmistakable language; but taken together, as parts of one transaction, it is otherwise. Taken as one transaction, it is clear that the plaintiff did not pay the considerations named in the deeds that it might simply resell the property to the Snyders on the terms named in the bonds, while the making of the lease is wholly unaccounted for, as, by the bonds, Snyders became the conditional owners, and entitled to the possession of the property. Taken together, as they must be, it is evident that the considerations named in them are not the true considerations, and therefore the case comes within the rule that permits parol proofs as to the true consideration.

Each party alleged and introduced testimony tending to show parol agreements made at the time of the execution of the instruments, to the effect claimed by them. It will be a sufficient answer to appellants' objection to the testimony introduced by appellee, that they

joined issue and introduced evidence with respect to parol agreements.

IV. As to the consideration upon which the lease was executed, there is a direct conflict of testimony. Mr. Schuler, cashier, and Mr. Wolf, vice-president of the plaintiff bank, who alone negotiated for the bank, testified directly to an agreement that the payments on the lease were to be applied to the indebtedness other than the twenty-seven hundred dollars evidenced by the two notes then executed. Mr. J. M. Snyder, who alone conducted the negotiations on behalf of Snyder Bros. and himself, testifies as positively that the payments on the lease were to go in satisfaction of the two-thousand-dollar notes executed at that time. The negotiations were not witnessed by any other person. Schuler and Wolf are corroborated by the fact that a much larger indebtedness than twenty-seven hundred dollars was due, or about to become due, to the bank, and by their desire and J. M. Snyder's willingness to secure the indebtedness. The value of the real estate was not more than sufficient security for the twenty-seven hundred dollars and five years' interest. Snyder's refusal to give a chattel mortgage is another corroboration of their testimony. Mr. Snyder is corroborated by the fact that in plaintiff's original petition and answer to defendant's cross-bill, and in the claim filed with the assignee, all verified by Schuler, the lease was treated as such, and no recovery asked for rent; and by the further fact that the Snyders were charged with rent upon the books of the bank. These circumstances, however, are explained by the nature of the instrument upon which the original petition, answer and claim were predicated.

The decided weight of the testimony is in favor of the conclusion that the consideration for the deeds and title-bonds was the extension of time to the Snyders on twenty-seven hundred dollars of the indebtedness, for the purpose of securing the same, and that the consideration for the instrument called a "lease," and the

giving thereby of a lien upon the personal property, was the extension of time on the remaining indebtedness, and the promise to make further advances of money, and as a security therefor; but that the security was put in this form because of Snyder's refusal to give a chattel mortgage on account of the fact that it would have destroyed their credit. The deeds and title-bonds had the effect of a chattel mortgage, and left the Snyders entitled to the possession of the property; hence that could not have been an inducement to the execution of the lease. It is a notorious fact that the giving of a mortgage by a merchant on his stock of goods is the end to credit, and generally to business. The lease, creating a lien, as it did, had the same effect upon the property that a mortgage would have had; yet it would not be so likely to disturb the credit of Snyders as the giving of a mortgage.

Among the several complaints urged by the appellants against the decree is the one that it exacts full payment without securing to the assignee of Snyder Bros. the unexpired term of the lease. There is nothing in the decree to deprive them of the full term, if payments are made according to the agreement. We have examined the decree as to all the objections urged thereto, and are of the opinion that it should be affirmed in all respects.                               AFFIRMED.