# D. M. OSBORNE & CO. v. STRINGHAM *et al.*

1. The plaintiff entered into a written agreement with one of the defendants, by virtue of which the latter became the agent of the former for the sale of certain farm machinery, and other property of that nature. The contract provided that it could not be changed in any manner except by the written agreement of plaintiff's manager, but was silent as to the price at which certain bundle carriers and flax attachments mentioned therein were to be sold. *Held*, that it was competent to prove that a subsequent parol agreement was made through the same agent that made the original contract, by the terms of which the defendant above named was authorized to furnish a bundle carrier and flax attachment free of charge to each purchaser of a binder, with the understanding that such article so furnished would not be charged to the account of said defendant.

2. A decision of this court upon a former appeal, and upon a state of facts substantially similar, will not ordinarily be reversed, and should be regarded as the law of the case so far as applicable.

3. A receipt is not usually conclusive as between the immediate parties, and is not within the rule which excludes parol evidence to vary the terms of a written instrument; and, where the purposes of the receipt are expressed in short and seemingly incomplete terms, parol evidence is admissible to explain the nature of the transaction.

4.  The issuance of a receipt upon taking a promissory note in settlement of an existing debt, or as evidence of a loan, is unusual, and generally unnecessary; and in case such receipt is ambiguous and uncertain, and it becomes necessary to construe it in order to determine the rights of the parties, the language of the instrument should bo interpreted most strongly against the party who caused the uncertainty to exist.

(Syllabus by the court.    Opinion filed January 31, 1894.)

Appeal from circuit court, Minnehaha county.   Hon. FRANK R. AIKENS, Judge.

This is the second appeal in this case, which is an action upon a promissory note.   The plaintiff had judgment, and on the first appeal the case was reversed and remanded for a new trial.   Upon the new trial the plaintiff again had judgment and the defendants appeal.   Reversed.

For the decision upon the former appeal see 1 S. D. 406, 47 N. W. 408.

*Davis, Lyon & Gates,* for appellants.

*Winsor & Kittredge,* for respondent.

FULLER, J.   This was an action predicated upon a promissory note for $190.82, executed by the defendant N. E. Stringham to the plaintiff D. M. Osborne & Co., and guarantied by the defendant A. J. Stringham.   Defendants, by their answer, admit both the execution of the note and the guaranty, but allege, in substance, that prior to the execution and delivery of the note the plaintiff and defendant N. E. Stringham entered into an agreement in writing, whereby the said N. E. Stringham, in consideration of certain commissions and compensations therein specified, became the agent of plaintiff to sell certain farm machinery and other property of that nature. That from time to time said agreement was modified by the parties thereto; that the last of such modifications was made on or about July 11, 1887, whereby, in consideration that the said N. E. Stringham would continue in said agency, and in order to meet certain competition in said business, the plaintiff promised and agreed to furnish said N. E. Stringham all such

flax attachments and bundle carriers as he should sell under
his agency free of charge; that in pursuance of said agreement
the said N. E. Stringham did continue in said agency, and did
sell 14 flax attachments and 15 bundle carriers, which the plain-
tiff furnished, and which, under the last modification of the
agreement, should not be charged to the said N. E. Stringham,
that said note was not given for any specific indebtedness to
the plaintiff, but was given only as collateral security for
whatever balance should be found due the plaintiff from the
said N. E. Stringham upon settlement between them; that no
such settlement has been made, and that there is, if anything,
but a small balance due the plaintiff.   In support of plaintiff's
cause of action the note in suit, together with the guaranty on
the back thereof, was offered and received in evidence, where-
upon plaintiff rested its case.   At the time of the execution and
delivery of the note in suit, and of even date therewith, plain-
tiff executed and delivered to the defendant a receipt which re-
lates to the same transaction, and which must be construed as
though the expression, "to be held as collateral to balance due
on settlement with D. M. Osborne & Co.," had been a recital in
the note.   Comp. Laws, § 3557.   The receipt was offered in ev-
idence by the defendant, and is as follows:   "Sioux Falls,
Jan'y 12th, 1888.   Received of N. E. Stringham his note end.
by A. J. Stringham, for $190.82, dated 1-12-1888, due 6-1-1888,
to be held as collateral to bal. due on settlement with D. M. Os-
borne & Co. for the season of 1887.   R. J. Rigby, for D. M. Os-
borne & Co."   The witness, N. E. Stringham, testified that
"Mr. Rigby was here on July 11, 1887. .He was acting for the
company, and was their general agent.   That he reported to
Mr. Rigby that he could not sell the machines at the prices
given on account of the extent of competition. That Mr. Rigby
said he would allow witness to sell machines, and throw in bun-
dle carriers and flax attachments, and would not charge him
for them.   Q.   Did you act upon that agreement and authority
that he gave you at that time?   A.   I did.   Q.   Did you sell

machines, after that was made, and before the note was given, with attachments? A. I did. Q. How many machines did you sell with attachments after this arrangement and before the giving of the note? A. Fourteen. I sold with the machines that I put out fourteen bundle carriers and fifteen flax attachments. Q. That was between these dates? A. Yes, sir. Q. In selling these machines did you make a discount from the original price that you had sold them for? A. I did —from $12 to '.15. Q. How much did the aggregate amount of these bundle carriers and flax attachments that you sold between those dates amount to? A. $175. Q. What was the difference for, between $190,82, or the amount of the note, and the amount of these attachments and bundle carriers? A. Some difference of about $15. That was a small difference in dispute between Rigby and myself on settlement. Q. Now, you say this note was given as collateral to the amount that should be found due? A. Yes, sir. Q. Has that allowance ever been made you in any way? A. It has not." The court ruled that Mr. Rigby had no authority, under the contract, to change its terms, and that the foregoing evidence relating to a change in the contract was wholly immaterial, and directed a verdict in favor of the plaintiff for the full amount claimed, and judgment was entered accordingly, from which this appeal was taken by the defendants.

This case, under a state of facts substantially the same, has been once decided by this court, and the law of that case, so far as applicable, is conclusive upon the parties, and is the law of the case. Bank v. Gilman (S. D.) 52 N. W. 869, and cases there cited. The issuance of a receipt upon taking a promissory note in settlement of an existing debt, or as evidence of a loan is unusual, and generally unnecessary; and, in case such receipt is ambiguous and uncertain, and it becomes necessary to construe it in order to determine the rights of the parties, the language of the instrument should be interpreted most strongly against the party who caused the uncertainty to

exist; and in this case the plaintiff is presumed to be th*a*t person. Comp. Laws § 3569. The original contract, which was offered and received in evidence, contained the following provision: "It is understood and agreed that in writing and printing this paper contains a full and entire agreement between the parties hereto; that it cannot be changed in any manner except by written agreement by D. M. Osborne & Co.'s manager; and that no outside verbal understanding with any traveling agent of D. M. Osborne & Co. is of any force or effect whatever." This contract was signed by D. M. Osborne & Co. by R. J. Rigby, contracting agent. Mr. Stringham testified that Mr. Rigby was the only person with whom he had dealt and adjusted matters during the three years that he had transacted business for the plaintiff, and we are disposed to conclude, under the circumstances of the case hereinafter mentioned, that the plaintiff would be bound by a subsequent parol agreement, made and entered into by and between R. J. Rigby on behalf of the plaintiff and the defendant N. E. Stringham, by the terms of which said defendant was authorized to throw in without charge a bundle carrier and flax attachment with each machine sold, in order to meet competition in his business, and carry out the purpose for which the agency was created; and if in said agreement it was stipulated that defendant Stringham should not be charged with such property, parol evidence would be admissible to prove that fact, together with all other facts relating to or affecting said subsequent. parol agreement. It is a noticeable fact that in the original agreement no prices for the bundle carriers and flax attachments are mentioned, so that in authorizing the defendant to dispose of them without compensation in connection with the sale of harvesters, and as an inducement.to purchasers, there was really no modification of prices or changes in the terms of the original written agreement. We therefore conclude that this case does not involve a consideration of the extent to which the common-law rule that a contract in writing cannot be changed by parol has been re-

laxed by the courts in order to prevent fraud or administer justice.    Sayer v. Wilson, 86 Ala. 151, 5 South. 157.

Counsel for respondent urges that the word "due", as used in the receipt taken at the time the note was given, refers to an indebtedness the amount of which had already been determined and agreed upon, and that the term "collateral", as it there appears, has no signification.    While the word "due" in its ordinary meaning and legal acceptance, when applied to indebtedness, relates to  the  time when payment is enforceable, yet the word nevertheless admits of a broader  meaning; and  from  an examination of the sentence in which it appears in  the receipt offered in evidence we may safely  conclude  that the word was not used in its restricted sense.    "Collateral security," in bank phraseology  means  some  security  additional  to the personal obligation of the borrower; and when a debtor  delivers  to  his creditor an evidence of indebtedness, with  the intention that it become  additional  security  for  his  personal  existing  obligation, it becomes  merely concurrent security, and is designed only to increase the means of  the creditor to realize the principal debt which it is given to secure.    In the case  before us we are inclined to  believe  that  the element of uncertainty enters into the receipt, and that the intention  of  the  parties that the note be given and held as collateral to such balance as might be found due on settlement is not repugnant to  the  recitals of the paper, and that parol evidence is  admissible and competent to explain  the  nature  of  the  transaction.    Comp. Laws § 3562; Smith v. Holland, 61 N. Y. 635; McClelland v. James, 33  Iowa 571; D. M. Osborne & Co. v. Stringham, (S. D.) 47 N. W. 408, and cases there cited.    We  think it was  error to hold that the evidence offered on the part of the defendants to  support  the allegations of their answer was immaterial, and to direct a verdict for the full amount claimed in  favor of the plaintiff.    The judgment of the circuit court is  therefore  reversed, and  the cause remanded for a new trial.