## McArthur v. Garman.

1. **Garnishment:** DISPUTED FUND: HUSBAND AND WIFE. A wife was
the owner of certain horses which her husband entered, in his own
name, but with his wife's money, for premiums at a county fair. These
entrance fees were returnable by the rules of the society, but the society
did not know that the horses belonged to, and that the fees were paid
by, the wife. *Held* that the society might have discharged its obliga-
tions by paying these fees to the husband, but that, while they remained
unpaid, they could not be appropriated by garnishment on execution
against the husband, against the objections of the wife as an intervenor.

2. **Chattel Mortgage:** OF HORSE AND EARNINGS: FUTURE EARNINGS.
A chattel mortgage upon a horse, which provided: "This mortgage to
cover all earnings of the horse, whether by premiums or otherwise,"
*held* not to include premiums earned after the execution of the mort-
gage. (*Lormer v. Allyn*, 64 Iowa, 725, followed in principle.

### *Appeal from Des Moines Circuit Court.*

### FRIDAY, MARCH 4.

THE plaintiff, being the owner of a judgment against D.
K. Garman, caused an execution to issue thereon, and the
Des Moines Agricultural Society was garnished as a sup-
posed debtor of Garman. The garnishee answered that it
was indebted in the sum of $117. Sarah Garman, the
appellant herein, intervened in the proceeding, claiming that
the indebtedness from the society was due to her, and not to
the defendant in execution. The cause was submitted to
the circuit court upon an agreed statement of facts, and it
was found that the plaintiff was entitled to the fund in dis-
pute, and a judgment was entered in accord with the finding.
Sarah H. Garman appeals.

*Hall & Huston,* for appellant.

*Hedge & Blythe,* for appellee.

ROTHROCK, J.—I. It appears from the agreed statement
of facts that, in September, 1884, and prior to the seven-
teenth day of that month, D. K. Garman
entered certain horses in his own name, as
contestants for premiums offered by said agri-
cultural society. All of the horses, except one known as

1. GARNISH-
MENT: dis-
puted fund:
husband and
wife.

"Barney," were .the property of the intervenor, Sarah H. Garman; but they were entered for premiums in D. K. Garman's name by her consent, but without the knowledge of the agricultural society as to her ownership. The rules of the society did not require horses to be entered in the name of the real owner. "She paid the entrance money for said horses out of her own funds furnished by her to D. K. Garman, but this was not, known to the society." On the fifteenth day of September, 1884, D. K. Garman bought of the intervenor, who is his wife, the said horse "Barney," and executed to her a chattel mortgage upon the horse. to secure the whole of the purchase money. The mortgage contained the following provision: "This mortgage to cover all earnings of the horse, whether by premiums or otherwise." The notes secured by the mortgage did not become due until December 15, 1884. The mortgage was filed for record on the seventeenth day of September, 1884. The sum of $101 of the amount owing by the garnishee was premiums earned by the horse "Barney" at the meeting of said society in September, 1884, subsequent to the execution of the mortgage; and the balance due from the society, being $16.40, was due for the amount of entrance money paid for entering the other horses owned by the intervenor, and which sum is returnable under the rules of said society.

We think that the plaintiff should not have had the judgment for the $16.40 entrance money. The agreed statement of facts shows that the money belonged to Mrs. Garman, and was paid for the purpose of entering her horses as competitors for premiums. The fact that her husband entered the horses in his own name did not preclude her from claiming that repayment should be made to her. Of course, as the horses were entered in the husband's name, if the society had refunded the entrance fees to him without notice of the wife's ownership of it, she could not recover of the society. But the money is not paid, and it should be refunded to tne party actually entitled thereto. It is conceded that it was

McArthur v. Garman.

the wife's money paid for the entrance of her horses; and it seems to us there is no escape from the conclusion that she should recover in that amount.

II. The horse known as " Barney " was not the property of the intervenor when he earned the premiums amounting to $101. If she is entitled to the premiums, it is by reason of her chattel mortgage upon the horse. This depends upon whether the clause in the mortgage, that it shall " cover all earnings of the horse, whether by premiums or otherwise," should be held to include premiums earned after the mortgage was executed.

2. CHATTEL mortgage: of horse and earnings: future earnings.

In the case of *Lormer v. Allyn*, 64 Iowa, 725, a chattel mortgage was executed upon a stock of groceries. The mortgage purported to cover " all books of account and rights of credit arising out of said business." It was held that the mortgage did not include " rights of credit arising out of the business " after the execution of the mortgage, but such only as had accrued before that time. That holding was based upon the rule " that a chattel mortgage will not be deemed to cover after-acquired property, unless the intention that it should is clearly expressed."

In our opinion the mortgage in the case at bar must be held subject to the same rule. There is no reference therein to the future earnings of the horse; and, in the absence of such a provision, such earnings cannot be held to be included in the mortgage. The judgment of the circuit court in favor of the plaintiff for premiums earned was therefore correct. But the intervenor should have been awarded the sum of $16.40, being the money paid by her for the entrance of her own horses.

MODIFIED AND AFFIRMED.