LIVE STOCK NATIONAL BANK OF SIOUX CITY, Appellant, v. C. L. JULIUS et al., Appellees.

SIOUX CITY CATTLE LOAN COMPANY, Appellant, v. C. L. JULIUS et al., Appellees.

CHATTEL MORTGAGES: Lien and Priority—Mortgagee and Attaching Creditors. A property description sufficient between mortgagor and mortgagee is, irrespective of notice of the ex-

istence of the mortgage, sufficient between mortgagee and attaching creditors who become such after the execution of the mortgage. So held as to a description covering *"all increases. and additions"* to enumerated animals.

CHATTEL MORTGAGES:   After-Acquired Property.   Principle rec-
2   ognized that *after-acquired* property may be included in a chattel mortgage.

*Appeal from Woodbury District Court.*—J. W. ANDERSON, Judge.

NOVEMBER 11, 1919.

SEPARATE actions brought by the Live Stock National Bank and the Sioux City Cattle Loan Company upon separate notes were aided by attachments levied upon some horses and cattle on which intervener claims a prior lien. The cases were, by agreement of counsel, consolidated and tried to the court upon the issues tendered by the petition in intervention.   Judgment was entered in favor of the intervener, and plaintiffs appeal.—*Affirmed.*

*Alfred Pizey* and *J. A. Miller,* for appellant.

*McCulla & McCulla,* for appellees.

STEVENS, J.—This is a controversy between attaching creditors and a mortgagee, in which each asserts a superior lien upon the proceeds received from the sale of a lot of horses and cattle.   Separate actions were

1. CHATTEL MORT-
   GAGES: lien and
   priority: mort-
   gagee and
   attaching
   creditors.

brought by the Live Stock National Bank of Sioux City and the Sioux City Cattle Loan Company against the defendants.   A writ of attachment was issued in each case, and levied upon the horses and cattle, which, by agreement between plaintiffs and defendants, were later sold, and the money deposited with the Cherokee State Bank of Cherokee, Iowa, as trustee.   The First National Bank of Cherokee, Iowa, intervened, claiming to be the holder of a chat-

tel mortgage covering all of the property seized under the writs of attachment.

The cause of action of the Live Stock National Bank is based upon a note for $9,000, dated November 3, 1917, due May 3, 1918, signed by A. Julius and payable to C. L. Julius, who subsequently transferred the note to plaintiff, waiving notice, demand, and protest, and guaranteeing the payment thereof. Both the maker and the endorser are made defendants in this case. The action of the Sioux City Cattle Loan Company is based upon a promissory note for $9,154.64, dated August 15, 1917, due February 15, 1918, payable to plaintiff, and signed by C. L. Julius. Intervener's cause of action is based upon a promissory note for $7,000, dated January 12, 1917, and due October 1, 1917, secured by a chattel mortgage, bearing the following description:

"100 head of three-year-old heifers of various colors, all dehorned. 78 head of steers and heifers about equally divided and all about two years old and of various colors. 42 head of two-and three-year-old steers of various colors. 1 six-year-old gray mare (Maud), 1 seven-year-old mare (Nig), 1 eight-year-old bay mare (Dinah), 1 span of geldings (Morg & Tom), 2 black three-and four-year-old colts, 2 black two-year-old colts, 5 colts of which 1 is three years old and the balance yearlings. All cattle branded with a cross (X) on the right side, with all increases and additions thereto until the note below described is fully paid.

"The above-described property is free from all incumbrance and now in my possession on the William Witte property on Section 29, in Cedar Twp."

It will thus be seen that the controversy is not between a mortgagee and a creditor existing at the time of the execution thereof, nor a subsequent purchaser or incumbrancer. Writs of attachment were levied upon all of the horses, except 3 which had died, and 31 head of the cattle that were

on the premises at the time the mortgage was executed. The rest of the property taken was subsequently acquired by the defendant, and placed upon the above-described premises. The property, when taken, was on the premises described in the mortgage.

The principal contention of counsel for appellant is based upon the asserted insufficiency of the description to cover subsequently acquired property, and upon the fact that it is not shown to have been the intention of the parties that same cover subsequently acquired property. There is some dispute in the evidence as to whether the officers of plaintiffs had actual knowledge of the mortgage, at the time credit was extended to the defendant. A. Julius testified that he told them all about the mortgage. This is denied by the officers with whom the transactions were had; but written, signed statements made by the defendant and delivered to plaintiffs tend to confirm his testimony. But it is immaterial whether plaintiffs had notice, actual or constructive, of the mortgage, as their liens attached only to the interest of the mortgagor in the property. *Theo. Hamm Brewing Co. v. Flagstad,* 182 Iowa 826; *Frantz v. Vincent,* 152 Iowa 680.

It has long been the settled law of this state that subsequently acquired property may be included in a chattel mortgage given to secure an existing indebtedness. *Scharfenburg v. Bishop,* 35 Iowa 60; *Iowa State*

2. CHATTEL MORTGAGES: after-acquired property.

*Nat. Bank v. Taylor,* 98 Iowa 631; *McArthur v. Garman,* 71 Iowa 34; *Lormer v. Allyn,* 64 Iowa 725; *Phillips & Son v. Both,* 58 Iowa 499; *In re Assignment of Thompson,* 164 Iowa 20. So that the controversy in this case centers in the question: Is the description of intervener's mortgage sufficient, as between the parties, to cover subsequently acquired property? If so, the rights of the mortgagee are superior to the rights of the attaching creditors.

The law does not require, as between the parties, that the description be sufficiently definite to impart constructive notice to third parties, but only that it be sufficient to express the purpose and intention of the parties thereto. *Theo. Hamm Brewing Co. v. Flagstad,* supra; and cases cited; *In re Assignment of Thompson,* supra. The mortgage, by its specific terms, covers all increase and additions to the cattle described therein. This language is comprehensive, and sufficient to cover all additions to the original herd. It is true that the words "increase," "additions," "substitutions," etc., are often found in chattel mortgages; but we are concerned in this case only with the question whether the description in the mortgage is sufficient, in a controversy between the parties, to cover the 70 head of cattle acquired subsequent to its execution. The defendant was a large dealer in cattle, buying and selling in Iowa and Dakota. The parties evidently contemplated that changes would be made in the stock kept on the farm, and it was desired that the mortgage cover all that would at any time be kept thereon, until the indebtedness secured thereby was fully paid. That the defendant so understood the arrangement is clearly shown by the fact that he told plaintiffs, when he applied for credit, about the mortgage, and that it covered all of the cattle on the premises described therein. We think the intention of the parties is clearly shown, and that the mortgage is binding upon the defendant. Whether, if all the property specifically described in the mortgage had been sold or removed from the premises before the 70 head in controversy were acquired by defendant and placed on the premises, the latter should be treated as additional thereto, is not before us, as the court found that at least 31 head of the original stock were taken from the premises under the writs, and, so far as the evidence shows, all of the 70 head were acquired before any

part of the cattle that were on the premises when the mortgage was given had been sold or removed therefrom.

No evidence of fraud, collusion, or bad faith in any form between intervener and defendant was offered, and the validity of the indebtedness alleged is in no sense denied. The lien of plaintiffs attached to whatever interest the defendant had in the property, subject to the prior lien of the intervener's mortgage. The court below made a finding of facts upon all material points in favor of the intervener, and this finding must be given the same weight as the verdict of a jury.

Some claim is made by counsel for appellant that, when the actions were consolidated for the purpose of trial, it was agreed that they be tried in equity. This is denied by counsel for appellee, in an amendment to appellant's abstract. The actions were properly brought at law, and were not by the court transferred to equity for trial. The court found that intervener was entitled to recover the proceeds received from the sale of all of the horses and the 101 head of cattle sold, and ordered the trustee to turn the same over to it, providing, also, in the judgment entry that, in the event of a controversy as to the amount the trustee should turn over, under the order of the court, further testimony might be taken for the purpose of identifying the proceeds received from the sale of the horses and cattle. We find no error in the record, and the finding and judgment of the court is in harmony with the evidence and is, therefore,—*Affirmed.*

LADD, C. J., WEAVER and GAYNOR, JJ., concur.